O’NIEDL, O. J.
(dissenting). Each of the three specialists who were appointed as a lunacy commission in this ease testified that the defendant had the mentality of a child 7 or 8 years of age. One of them, Dr. O’Hara, described the man thus:
“He is of such a low grade, mentally, that he measures up to a child between 7 and 8 years of age, and he suffers from some neurosis seizure which makes him easily led and easily fooled.”
That opinion was concurred in by the two other members of the commission, one of whom, Dr. Daspit, said outright that the man was “a moron type.” There is no doubt that he is a moron, because, from the fact that one of the of the doctors testified that the man had served in the World War and was afterwards in the marine hospital, I judge that he is somewhere near 30 years of age.
He is a negro in indigent circumstances. He was put into jail a few days after the commission of the crime, and was tried and convicted on the eleventh day after the commission of the crime, being defended by an attorney appointed by the judge, and giving his services gratis. The investigation into the defendant’s mental condition, as ordered by this court, extended only over the period between the date of the defendant’s arrest and the date of the investigation. There was no available record or history of his condition previous to the date of his arrest. The only witnesses whom the attorney for the defendant could obtain were the jailers and fellow prisoners. Capt. Rennyson and Deputy Sheriff Betterly testified that the man had had some kind of fits at rather frequent intervals, that he was a good prisoner, and had been appointed captain of the yard, and served as such for four or five months. Seven fellow prisoners with Brodes, as witnesses in this investigation into his mental condition, described the fits,” or seizures, which he was subject to. It is true that these prisoners were either awaiting trial or under sentence for divers and sundry high crimes and offenses ; but, in producing them as witnesses, the defendant complied with the fundamental rule of producing the best evidence available, and their testimony is not contradicted in any respect. On the contrary, it is eorrobo *351 rated by tbe testimony of the defendant’s keepers.
Judge Dowling, before whom, Brodes was tried and convicted of this crime of murder, but who had ceased to be judge when the ease was remanded for this investigation into Erodes’ mental condition, testified as a witness for the state in this proceeding. Judge Dowling described the strange conduct that Brodes went through during his trial, and, from the judge’s description, I am convinced that the defendant was not mentally capable of defending himself. The judge testified that the defendant would not take advice from the attorney appointed to represent him; that he kept insisting upon his right to take the witness stand and tell all about the murder, in order to implicate two other men who were on trial for the crime; that Brodes followed him, the judge, into the latter’s office, and, in presence of the assistant district attorney, who was prosecuting him, and against the protest of his own attorney, and against the advice of the judge, insisted upon his right to take the witness stand and make a complete confession of the crime, which right was denied him. The judge testified that he thought that the man was very excited, but not insane. I am convinced that he was sufficiently insane to be incapable of defending himself in this prosecution for murder, in which he is condemned to die.
I would not approve of hanging a child 7 or 8 years of age, or of trying a child for murder, at that age. It is less inhuman, I believe, to put to death a moron having a mind of a 7 or 8 year old child, than to put to death a child at that age; but the law does not read that way.
My opinion is that the verdict and sentence in this ease ought to be set aside, and the defendant sent to the asylum for the criminal insane. Therefore I dissent from the opinion and decree rendered in this case.